UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-09-236 |
| | § | |
| ELEAZAR (ELI) CASTILLO GARCIA (1), | § | |
| MARGUERITE JEANETTE GARCIA  (2), | § | |
| And JOHN D. MARTINEZ (3), | § | |
| Defendants. | § | |

## ORDER ON PENDING MOTIONS

In this criminal action, the United States charges that defendants conspired to, and participated in, a scheme to defraud Medicare and Medicaid, in violation of 18 U.S.C. § 371 and § 1347.  Husband and wife defendants, Eli Garcia and Marguerite Garcia, have filed a joint motion for Bill of Particulars, in which defendant John Martinez has joined.[1]  In addition, the Garcias have filed a motion to dismiss the indictment for failure to allege an offense (D.E. 62), and John Martinez has filed a motion to dismiss the indictment as vague.  (D.E. 63).   The government has filed a response objecting to the Bill of Particulars, arguing that the indictment sufficiently notifies defendants of the charges against them  (D.E. 60).   In addition, on May 13, 2009, the government filed a response objecting to the defendants' motions to dismiss the indictment.  (D.E. 86).

For the reasons stated herein, defendants' motion for a Bill of Particulars is denied, as are the motions to dismiss.

**I.     Jurisdiction.**

The Court has jurisdiction pursuant to 18 U.S.C. § 3231.

---

[1] On April 30, 2009, John Martinez filed a motion to adopt motions of other defendants (D.E. 65), and on May 1, 2009, the Court granted the motion.  (D.E. 79).  Therefore, Mr. Martinez is considered a movant in all motions filed by any defendant.

II.     **Background facts.**

Beginning in 1996, Mrs. Garcia owned a business named Orthopedic Specialists D.M.E., Inc.   Orthopedic Specialists was a supplier of durable medical equipment for Medicare/Medicaid. Mr. Garcia was employed by Orthopedic Specialists.  He was ***not*** then, nor has he ever been,  a state-licensed podiatrist, orthotist, or prosthetist.  However, from 1996 until September 1, 1999, Mr.  Garcia was legally able to provide orthotics and prosthetic goods to customers, and to bill Medicare/Medicaid for those supplies and services, because Texas law did not require him to be licensed.

Since September 1, 1999, Texas law requires any person practicing orthotics and/or prosthetics to have a current license issued by the Texas Board of Orthotics and Prosthetics (the "O & P Board").  Tex. Occupations Code § 605.251.  In addition, any facility in which orthotics or prosthetics are conducted must be accredited.  Id. at § 605.260.  To be accredited, such facility "must be under the on-site direction of an orthotist or prosthetist licensed by the board in the discipline for which the accreditation is sought."  Id. at 605.260(c).

In March, 2000, the O & P Board granted facility accreditation to Orthopedic Specialists.

In October, 2001, the O & P Board informed Mr. Garcia that he could not serve as the on-site practitioner for Orthopedic Specialists because he was not licensed. On October 10, 2001, the O & P Board issued to Mr. Garcia a Cease and Desist order to stop practicing orthotics.

On November 14, 2001, the O & P Board notified the Garcias that it was going to revoke Orthopedic Specialists' accreditation because it did not have a licensed practitioner on-site.  On December 31, 2001, the facility's accreditation expired without a renewal application being filed.

On January 14, 2002, Medicare revoked Orthopedic Specialists' Medicare supplier number, effective December 31, 2001.

In February, 2002, the Garcias entered into an agreement with the Martinez brothers,[2] both licensed orthotists, in which the Martinez brothers agreed to be the on-site licensed practitioners for Orthopedic Specialists.  Thereafter, on September 26, 2003, the O & P Board granted accreditation to Orthopedic Specialists.  In addition, the Medicare supplier number was reinstated.

From March 4, 2002, through December 23, 2008, Orthopedic Specialists billed approximately $1,161,185.31 for goods and services.  Of that billed amount, $800,529.85 was paid by Medicare/Medicaid.  For that same period of time, Orthopedic Specialists paid the Martinez brothers $642,969.74.

## III.    Indictment charges.

Defendants submitted over three thousand billings to Medicare/Medicaid for orthotic and prosthetic goods and services.  The government contends the billings were a fraud upon Medicare/Medicaid [3] because defendant Eli Garcia, and not the Martinez brothers, acted as the on-site practitioner of Orthopedic Specialists, despite the fact that he was not licensed to do so, and in fact, had failed the exam to be a licensed orthotist on five occasions.  The government alleges that the Martinez brothers were only "on-site" once a week at Orthopedic Specialists in Corpus Christi, that defendants knew once-a-week was insufficient to qualify as an "on-site" practitioner for state licensure purposes, and that the Martinez' simply lent their names and licenses to Orthopedic Specialists to obtain accreditation, with the understanding that Mr. Garcia

---

[2] The Martinez brothers were located in or near San Antonio, Texas.  They were co-owners of San Antonio Orthotics Corp. d/b/a San Antonio Orthotics and Artificial Limbs.

[3] The Texas Medicaid program ordinarily does not pay for therapeutic shoes and inserts unless the Medicaid beneficiary is also a recipient of *Medicare* Part B. In such cases, Medicaid will pay the remaining 20% as what is known as a cross-over claim.  Cross-over claims to Medicaid are valid only when the underlying Medicare claims are valid.

would perform the services of an orthotist and bill Medicare/Medicaid for those services.  The government's evidence of this "scheme" is the billing entries of Orthopedic Specialists.

Defendants employed the Health Care Procedure Coding System ("HCPCS") to bill their patients.  The HCPCS is a standardized coding system for describing and identifying health care services and supplies.  See http://www.cms.hhs.gov/MEdHCPCSGenInfo/.  It was developed by, and is maintained by, the federal government to provide a uniform language that accurately describes the specific medical services and items delivered to a patient, and in many cases, the qualifications of the person providing the services.  Providers billing Medicare/Medicaid ***must*** use the applicable HCPCS billing code to describe every medical service and item they claim to have provided.

The government maintains that defendants used the HCPCS billing codes on every one of their billings to Medicare/Medicaid.  That is, by use of the HCPCS codes, defendants' billing statements reflected that therapeutic shoes and inserts for diabetic patients were provided as having been "fitted and furnished by a podiatrist, pedorothist, orthotist or prosthetist," when they were not, in a deliberate attempt to defraud Medicare/Medicaid.

**IV.     Bill of Particulars.**

Defendants move for a Bill of Particulars arguing that the government has failed to state with specificity what false and fraudulent representations were made by defendants to promote the alleged scheme to defraud Medicare/Medicaid.  (D.E. 57).  Defendants point out that this is not a case in which goods and services were never delivered, and there is no allegation as such. They argue that Mr. Garcia ***was*** authorized to sell "off-the-shelf" orthotics, and at most, that the government has alleged merely that defendants sold shoes without a license, a violation only of state regulatory law.

The purpose of a Bill of Particulars is to apprise a defendant of the charges against him with enough detail to allow him to prepare a defense.  United States v. Montemayor, 703 F.2d 109, 117 (5th Cir. 1983).  Denial of a motion for a bill of particulars is reviewable on appeal from a judgment of conviction, but the judgment will be reversed only if denial of the bill was a clear abuse of discretion.  United States v. Vasquez, 867 F.2d 872, 874 (5th Cir. 1989).  Such an abuse will be found only if it appears the accused was actually surprised at trial and that his rights were substantially prejudiced by the denial.  Id.

Medicare/Medicaid covers the costs of shoes for patients with diabetes as long as the shoes are "custom-molded" or "extra-depth."  42 U.S.C. § 1395 l(o).  The statute provides further that such "custom-molded" and "extra-depth" shoes must be:

> ... fitted and furnished by a podiatrist or other qualified individual (such as a pedorthist or orthotist, as established by the Secretary) who is not the physician described in subparagraph A (unless the Secretary finds that the physician is the only such qualified individual in the area);...

42 U.S.C. § 1395x(s)(12)(C).

That is, the very definition of custom-molded or extra-depth incorporates the requirement that these shoes be fitted by a podiatrist or qualified individual.

Defendants maintain that the "extra depth shoes" specifically referred to in 42 U.S.C. § 1395 l(o) are commonly known as "off-the-shelf" orthotics, and they cite to 42 C.F.R. § 414.402(4), which defines "off-the-shelf"orthotics.[4]  However, extra-depth shoes are *not* included in the C.F.R. definition of off-the-shelf orthotics.  Moreover, as noted above, extra-depth shoes are specifically listed in § 1395 l(o), which incorporates § 1395 x(s)(12).  Section

---

[4] Under the Federal Regulations, "off the shelf orthotics" are defined as orthotics "that require minimal self adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling or customizing to fit a beneficiary."   42 C.F.R. § 414.402(4).

1395 x(s)(12) defines extra-depth shoes as shoes that are "fitted and furnished by a podiatrist or other qualified individual..." Id. at § 1395 x(s)(12)(C). Thus, defendants' equating extra-depth shoes with "off-the-shelf" orthotics is not supported by statute.

Defendants contend that the indictment does not provide notice. They argue that Mr. Garcia simply sold "off the shelf" therapeutic shoes to patients with prescriptions, and that the goods were delivered, such that Medicare/Medicaid never lost any money. The question the Court must address is whether the allegations in the indictment are sufficient to allege a scheme to defraud under § 1347. United States v. Sampson, 371 U.S. 75, 78 (1962) ("...none of the charges have been established by evidence, but at this stage in the proceedings, the indictment must be tested by its sufficiency to charge an offense.").

The health care fraud statute, 18 U.S.C. § 1347, provides in relevant part:

> Whoever knowingly and willfully executes or attempts to execute a scheme or artifice–
> (1)  to defraud any health care benefit program; or
> (2)  to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
> in connection with the delivery of or payment for health care benefits, items or services, shall be fined under this title or imprisoned not more than 10 years or both....

18 U.S.C. § 1347.

Here, the indictment charges that defendants defrauded Medicare/Medicaid by identifying the Martinez brothers as the on-site practitioners for Orthopedic Specialists so that Orthopedic Specialists could obtain its accreditation and Medicare supplier number, but that Mr. Garcia  actually performed the majority of the work. This alleges a "scheme" to defraud Medicare/Medicaid because it alleges that a non-licensed individual billed Medicare/Medicaid for services that, by federal and state law, could only be provided (and as such billed) by a licensed individual.

It is clear that the 31-page indictment gives adequate notice of the charges against defendants.  The language of the indictment describes the essential elements of the crime and charges that defendants "knowingly and willfully executed and attempted to execute, a scheme and artifice to defraud health care benefit programs...".  (D.E. 1 at ¶¶ 78, 82).   This tracks the language of § 1347 which states "whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice to defraud any health care benefit program," and makes clear that defendants are being charged with  subsection (1).  The indictment identifies Medicare/Medicaid as the health care benefit programs allegedly defrauded, and outlines the specific scheme or artifice by which defendants allegedly defrauded those health care benefit programs: defendants obtained facility accreditation and a Medicare supplier number by using the Martinez' credentials, and then billed Medicaid/Medicare for services described by the HCPCS as requiring a licensed podiatrist or otherwise qualified practitioner that were in fact supplied by Mr. Garcia.  Id. at ¶¶ 27, 57.  In addition, the indictment specifically sets forth the overt acts of defendants to support the conspiracy charge of 18 U.S.C. § 371.  (See D.E. 1 at ¶ 80).

Moreover, a bill of particulars is not warranted in this case because defendants have received open discovery from the government.  It is well established that if the government has provided the information called for in some other satisfactory form, then no bill of particulars is required.  Vasquez, 867 F.2d at 874.  Here, the government's voluntary discovery has included patient files, billing records, the reports of the interviews of government witnesses (including co-workers, former co-workers, employees, and former employees of defendants), and the oral or written statements given by defendants to the government investigators.  As such, defendants can not claim surprise or prejudice.

The Court finds that the indictment adequately notifies all defendants of the crimes charged, and that the open discovery dispels the need for any further clarification from the government.  Accordingly, defendants' motion for a Bill of Particulars (D.E. 57) is DENIED.

**V.      Defendants' motion to dismiss for failure to allege an offense.**

The Garcias, joined by John Martinez, move to dismiss the indictment for failure to allege a penal offense.  (D.E. 62).  In particular, defendants maintain that the government has failed to allege a scheme to defraud.   Id. at 1.

The therapeutic shoes and accompanying inserts available to individuals suffering from diabetes mellitus are defined in the Social Security Act (Social Security Act § 1861(s)(12); 42 U.S.C § 1395x(s)(12)).  Essential to defendants' argument is their contention that extra-depth shoes qualify as "off-the-shelf" orthotics.  However, as noted above, the statutory definition of extra-depth shoes necessarily implies that they are fitted and furnished by a podiatrist or other qualified individual, and are ***not*** off-the-shelf orthotics.  42 U.S.C. § 1395 x(s)(12)(C).  More important, however, is the fact that the HCPCS billing codes employed by Orthopedic Specialists applied to shoes that required fitting and fabrication by a podiatrist or otherwise qualified practitioner.  Stated another way, the codes used on the bills to Medicare/Medicaid reflected that specialized services were provided, and not merely the sale of an off-the-shelf orthotic item.

The Court  finds that, at this stage in the case, the indictment has sufficiently alleged a violation of federal law pursuant to 18 U.S.C. § 1397, and a conspiracy to violate federal law pursuant to 18 U.S.C. § 371.   As noted by defendants, this is not a case involving phantom patients, goods, or services.  There is no dispute that therapeutic shoes were indeed provided to diabetic patients.  The crux of the government's fraud claim is that defendants were able to bill Medicare/Medicaid for services rendered by an unlicensed individual because they represented

to state and federal authorities that Orthopedic Specialists had an on-site licensed orthotist, and this representation was made for the sole purpose of charging Medicare/Medicaid. Accordingly, the Court denies defendants' motion to dismiss the indictment for failure to allege an offense. (D.E. 62).

## VI.    Vague indictment.

Defendant John Martinez moves to dismiss the indictment on the grounds that the laws rendering his conduct in violation of federal law are unconstitutionally vague. (D.E. 63). Martinez argues that the laws concerning orthotics and who may supply and bill Medicare/Medicaid for them are inconsistent and contradictory. Martinez maintains that both Medicare and Texas regulations allow an unlicensed individual to sell off-the-shelf orthotics. He claims further that unlicensed individuals are permitted to "alter" to some degree the off-the-shelf orthotics without such conduct constituting the practice of orthotics. Martinez states:

> The precise degree of alteration that is allowed without a licensed practitioner's involvement, however, is ill-defined and vague in the specific health care regulations that govern this area. Therefore, it is impossible to know exactly what conduct (i.e., what degree of alteration) is permissible under the applicable law.

(D.E. 63 at 1).

A law is unconstitutionally vague when it fails to enable ordinary people to understand what conduct it prohibits, or if it encourages arbitrary and discriminatory enforcement. City of Chicago v. Morales, 527 U.S. 41, 56 (1999). The statute must be examined in light of the facts of the case at hand. United States v. Powell, 423 U.S. 87, 92 (1975).

Section 1347 applies to anyone who knowingly and willfully attempts to execute a scheme or artifice to defraud a health care benefit program in connection with health care services. See 18 U.S.C. § 1347. A "scheme or artifice to defraud" has long been construed to mean any deliberate plan of action or course of conduct by which someone intends to deceive or

cheat another of something of value.  See e.g.  United States v. Klein, 543 F.3d 206, 210 (5th Cir. 2008).  As such, the statute requires a showing that defendants engaged in the acts charged knowingly, willfully, and with a specific intent to defraud, and not because of mistake or other innocent reason.  In this regard, § 1347 is like the mail and wire fraud statutes, both of which have repeatedly withstood challenges based on vagueness.  See  United States v. Daniels, 247 F.3d 598, 600 (5th Cir. 2001) (discussing mail fraud statute); United States v. Gray, 96 F.3d 769, 776-77 (5th Cir. 1996) (wire fraud).

Dismissal under the void-for-vagueness doctrine is not warranted in this case.  While Medicare regulations are admittedly complex, the statutes defendants are charged with violating provide relatively straightforward descriptions of fraud and conspiracy to commit fraud, and thus provide defendants with sufficient notice as required by the Fifth Amendment.  See 18 U.S.C. §§ 371, 1347.  These statutes do not specify the myriad of fraud schemes that might be devised.  However, a statute "can be unambiguous without addressing every interpretative theory offered by a party," so long as "the statute encompasses the conduct at issue."  Salinas v. United States, 522 U.S. 52, 60 (1997).

To the extent Martinez argues that the regulations do not provide notice as to the "precise degree of alteration that is allowed without a licensed practitioner's involvement," he can raise that argument before a jury.  However, this issue does not render the indictment on fraud void for vagueness.  Defendants are charged with conspiring and participating in a plan to defraud Medicare/Medicaid by representing that Orthopedic Specialists had an on-site licensed orthotist for purposes of billing orthotics.   The indictment is sufficiently straightforward to place defendants on notice.  Accordingly, Martinez' motion to dismiss the indictment as vague (D.E. 63) is DENIED.

**VII.    Conclusion**.

For the reasons stated above, the Court DENIES:

(1)     Defendants' motion for a bill of particulars (D.E. 57);

(2)     Defendants' motion to dismiss the indictment for failure to state an offense (D.E.

62); and

(3)     Martinez' motion to dismiss the indictment as void.  (D.E. 63).


SIGNED and ORDERED this 26th day of May, 2009.

_____
Janis Graham Jack
United States District Judge